# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

### Case No. 23-1196

—————

LOUISVILLE GAS AND ELECTRIC COMPANY AND
KENTUCKY UTILITIES COMPANY

PETITIONERS,

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,

RESPONDENT.

—————

## PETITION FOR REVIEW

—————

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), Rule 15(a) of the Federal Rules of Appellate Procedure, and Rule 15 of the United States Court of Appeals of the District of Columbia Circuit, Louisville Gas and Electric Company ("Louisville Gas and Electric") and Kentucky Utilities Company ("Kentucky Utilities") ("Petitioners") respectfully petition this Court for review of the following orders of the Federal Energy Regulatory Commission ("FERC" or "Commission"):

- *Louisville Gas & Elec. Co.*, Docket Nos. EC98-2-005 and ER18-2162-004, Order On Remand, 183 FERC ¶ 61,122 (May 18, 2023) ("May 18 Remand Order"); and

- *Louisville Gas & Elec. Co.*, Docket Nos. EC98-2-006 and ER18-2162-005, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, 184 FERC ¶ 62,036 (July 17, 2023) ("July 17 Order").

Petitioner has attached a copy of both the May 18 Remand Order and the July 17 Order to this Petition as Attachment A. Petitioner has also attached to this Petition the Corporate Disclosure Statement required by Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1 as Attachment B; and a Certificate of Service, with the list of parties to the underlying proceedings, as Attachment C.

The May 18 Remand Order arises from this Court's decision in *Kentucky Municipal Energy Agency v. Federal Energy Regulatory Commission*, 45 F.4th 162 (D.C. Cir. 2022), in which the Court affirmed FERC's 2019 determination that the 1998 Louisville Gas and Electric/Kentucky Utilities merger would continue to be in the public interest after the removal of "merger mitigation depancaking" but vacated and remanded FERC's 2019 order because it was arbitrary for the Commission not to evaluate the impact of the removal of merger mitigation depancaking on rates. In the May 18 Remand Order, FERC reversed its prior acceptance of the removal of merger mitigation depancaking. On June 16, 2023, Petitioner filed a timely request for

rehearing, which request the Commission denied by operation of law in the July 17 Order.*

This Court has jurisdiction over this Petition For Review. This Court has subject matter jurisdiction under 16 U.S.C. § 825*l*(b), and Petitioner timely filed this Petition For Review within 60 days of the July 17 Order in accordance with 16 U.S.C. § 825*l*(b).

Dated: July 28, 2023

Respectfully Submitted,

CHRISTOPHER R. JONES
AMIE V. COLBY
MILES H. KIGER
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 662-2181 (CJ)
chris.jones@troutman.com
amie.colby@troutman.com
miles.kiger@troutman.com

/s/ *Misha Tseytlin*
MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240 (MT)
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

*Attorneys for Petitioners*

---

* Request for Rehearing of Louisville Gas and Electric Company and Kentucky Utilities Company, Docket Nos. EC98-2-006 and ER18-2162-005 (June 16, 2023) (*available at* https://elibrary.ferc.gov/eLibrary/filedownload?fileid=AA7DC0E2-E40E-C8C5-A71C-88C5F7F 00000).

**ATTACHMENT A**

183 FERC ¶ 61,122
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.

| | |
|---|---|
| Louisville Gas and Electric Company | Docket Nos.  EC98-2-005 |
| Kentucky Utilities Company | ER18-2162-004 |

ORDER ON REMAND

(Issued May 18, 2023)

1.      On August 5, 2022, the United States Court of Appeals for the District of Columbia Circuit (Court) reversed the Commission's acceptance of a proposal from Louisville Gas and Electric Company (LG&E) and Kentucky Utilities Company (KU) to modify Rate Schedule No. 402 (RS 402) to remove rate depancaking related to an earlier merger between LG&E and KU (1998 Merger).[1]  The Court remanded the case to the Commission for further proceedings.[2]

2.      As discussed below, on reexamination of the record and by reference to the Court's directions on remand, we reverse the Commission's prior acceptance and reject the Mitigation Removal Application.  We direct LG&E and KU to make a compliance filing within 30 days of the date of this order reinstituting the depancaking provisions of RS 402.

---

[1] *See* Joint Application under FPA Section 203 and 205 of Louisville Gas and Electric Company, et al., Docket Nos. EC98-2-001 and ER18-2162-000 (Aug. 3, 2018) (Mitigation Removal Application).  The Commission accepted the Mitigation Removal Application in *Louisville Gas & Elec. Co.*, 166 FERC ¶ 61,206 (2019 Mitigation Removal Order), *order on reh'g*, 168 FERC ¶ 61,152 (2019) (2019 Mitigation Removal Rehearing Order), *order on reh'g*, 172 FERC ¶ 61,228 (2020) (2020 Mitigation Removal Rehearing Order).  *See Louisville Gas and Elec. Co.*, FERC Electric Rate Schedule 402: Term Sheet and Agreement Among Certain Intervenors and Applicants Regarding Withdrawal from the Midwest ISO, Docket No. ER06-602-000 (filed Feb. 2, 2006).

[2] *Kentucky Mun. Energy Agency v. FERC*, 45 F.4th 162 (D.C. Cir. Aug. 5, 2022) (*KYMEA*).

## I.  **Background**

3.     This proceeding originally came to the Commission in 1998 as an application filed by LG&E and KU requesting approval under section 203 of the Federal Power Act (FPA)[3] for the merger of the holding company parents of LG&E and KU.  The Commission approved the 1998 Merger subject to several conditions.[4]  Because customers in the KU destination market would lose LG&E as a viable competitor to KU, LG&E and KU's analysis of the 1998 Merger at the time indicated that the merger would increase market concentration in the KU destination market beyond the thresholds specified in the Merger Policy Statement.[5]  To address this concern, LG&E and KU committed to mitigate the potential for increased horizontal market power in the KU destination market through several mitigation measures.[6]  The Commission concluded that LG&E and KU's proposed measures, in conjunction with their continued participation in the then-newly formed Midwest Independent Transmission System Operator, Inc. (MISO),[7] would ensure that the 1998 Merger would not adversely affect horizontal competition.[8]  The Commission noted, however, that it would evaluate any subsequent request by LG&E and KU to withdraw from MISO in relation to its effect on competition in the KU destination market.[9]  With respect to the effect of the transaction on rates, the Commission accepted the ratepayer protections proposed by LG&E and KU,

---

[3] 16 U.S.C. § 824b.

[4] *Louisville Gas & Elec. Co*., 82 FERC ¶ 61,308 (1998) (Merger Order).

[5] *See Inquiry Concerning the Comm'n's Merger Pol'y Under the Fed. Power Act: Pol'y Statement*, Order No. 592, FERC Stats. & Regs. ¶ 31,044 (1996) (Merger Policy Statement) (cross-referenced at 77 FERC ¶ 61,263), *reconsideration denied*, Order No. 592-A, 79 FERC ¶ 61,321 (1997).

[6] Specifically, LG&E and KU proposed to sell energy through a trust intended to prevent LG&E and KU from withholding supply to drive prices above competitive levels in the KU destination market through 2005 and to reduce the base rates of the KU requirements customers if the 1998 Merger were approved.  Merger Order, 82 FERC at 62,222.  In addition, they committed to seek approval to transfer operational control over their transmission facilities to MISO.

[7] Effective April 26, 2013, MISO changed its name from "Midwest Independent Transmission System Operator, Inc." to "Midcontinent Independent System Operator, Inc."

[8] Merger Order, 82 FERC at 62,223.

[9] *Id.* at 62,222-23.

which included a five-year rate cap and a pass through of merger-related savings to wholesale requirements customers.[10]

4.      In 2005, LG&E and KU filed a proposal to withdraw from MISO.  At that time, LG&E and KU proposed that transmission rates for new service into and through their system from MISO would remain depancaked.[11]  One of the ways this depancaking was implemented was through the creation of RS 402, an agreement between LG&E and KU and a group of Kentucky Municipals and the Tennessee Valley Authority Distributors Group consisting, in total, of eighteen different municipalities in Kentucky and Tennessee.[12]  LG&E and KU claimed that maintaining depancaked rates would address the horizontal market power issues that the Commission had identified in the Merger Order.  The Commission agreed, finding that with some revisions, LG&E and KU's proposal would maintain depancaked rates between LG&E and KU's system and MISO, thereby establishing mitigation comparable to that previously provided through MISO membership.[13]  In evaluating the proposal, the Commission noted that the proposal must address the concerns underlying the conditions that it established in connection with the 1998 Merger, "particularly those relating to independence and rate depancaking," to "maintain the expanded geographic scope of the KU [destination market]."[14]

5.      In 2018, LG&E and KU filed the Mitigation Removal Application under FPA section 203(b),[15] proposing to modify RS 402 to remove the portions of the rate schedule that addressed rate depancaking (Mitigation Removal Proposal).  LG&E and KU argued

---

[10] *Id.* at 62,224.

[11] Rate pancaking, or a pancaked rate, occurs when a transmission customer is charged separate access charges for each utility service territory that the customer's contract path crosses.  *Midwest Indep. Trans. Sys. Operator, Inc.*, 164 FERC ¶ 61,191, at P 3 n.7 (2018).

[12] LG&E and KU also instituted separate depancaking agreements with the Indiana Municipal Power Agency and the Illinois Municipal Electric Agency, which they have not sought to modify here.  Mitigation Removal Application at 10 n.38.

[13] *Louisville Gas & Elec. Co.*, 114 FERC ¶ 61,282, at P 110 (2006) (MISO Withdrawal Order).

[14] *Id.* PP 3 & 118.  The conditions regarding independence were a reference to vertical market power concerns the Commission identified in the Merger Order.

[15] 16 U.S.C. § 824b(b) ("The Commission may from time to time for good cause shown make such orders supplemental to any order made under this section as it may find necessary or appropriate.").

that 20 years of market development and the addition of new sources of supply illustrated that rate depancaking was no longer necessary to mitigate the horizontal market power concerns raised by the 1998 Merger.  Protestors argued that removal of the mitigation would increase transmission costs and limit the availability of alternative competitive supply for the customers that were, and are still, KU requirements customers within the LG&E and KU market.  Protestors also argued that removal of the mitigation would have an adverse effect on rates because many customers entered into supply arrangements after terminating their requirements contracts with LG&E and KU under the assumption that the rate depancaking would continue in force.

6.      In the 2019 Mitigation Removal Order, the Commission conditionally approved the removal of the depancaking mitigation in RS 402, finding that the 1998 Merger continues to be consistent with the public interest without the mitigation.  The Commission stated that because the mitigation was implemented to remedy a horizontal market power concern, in evaluating the Mitigation Removal Proposal the Commission would only consider the effect of the removal on horizontal competition, rather than all of the factors the Commission traditionally considers when evaluating applications under section 203(a).[16]  Regarding competition, the Commission found that loads located in the LG&E and KU market would continue to have access to a sufficient number of competitive suppliers after the mitigation was removed and that competitive conditions had changed significantly since the 1998 Merger.[17]  As a result, the Commission found that the 1998 Merger continued to be consistent with the public interest without the mitigation.  However, the Commission identified customers that had relied on depancaking mitigation when committing to and investing in future power supply arrangements.  To address that reliance interest, the Commission approved a transition mechanism that enabled LG&E and KU to remove the depancaking mitigation, while allowing customers time to adjust.[18]

## II.    Court's Order

7.      Several parties sought judicial review of the 2019 Mitigation Removal Order and subsequent rehearing orders.  On August 5, 2022, the Court upheld in some respects, and overturned (vacated and remanded) in other respects, the challenged orders.[19]  The Court agreed with the Commission's determination that sufficient wholesale power competition would persist even with the return of rate pancaking and found that it "was based on

---

[16] 2019 Mitigation Removal Order, 166 FERC ¶ 61,206 at P 44.

[17] *Id.* PP 67-73.

[18] *Id.* PP 74-82.

[19] *KYMEA*, 45 F.4th at 177.

substantial evidence from which it drew sensible inferences employing its expert knowledge of electricity markets."[20]

8.    However, the Court disagreed with the Commission's decision to focus only on the effect of the Mitigation Removal Proposal on horizontal competition in its analysis; the Court found that the challenged orders failed to address the effect repancaking would have on rates.[21]  The Court stated that section 203(b) required an analysis of how modifying a merger order affects the public interest, and that the merger's effect on rates is a central factor in the Commission's public-interest analysis.[22]  The Court noted that "[t]he refusal to look at rate effects was quite consequential in this case because rate hikes are not only likely—they are certain.  All parties agree that they will happen."[23]  The Court thus vacated the Commission's decision and remanded for the Commission to reconsider its decision in light of the direct and indirect effects ending depancaking would have on customers' rates.[24]

9.    As to the transition mechanism adopted by the Commission, the Court found it to be reasonable in most respects, with two exceptions.  The Court found that the Commission had erred in allowing for the transition mechanism to cover the entirety of a contract for Princeton and Paducah, Kentucky that extends to 2057, and in not allowing for the transition mechanism to cover the full eight-year transmission reservation purchased by Kentucky Municipal Energy Agency from MISO.[25]

## III.    Discussion

10.    Upon review of the Court's Order and the facts in the record, we find that the Mitigation Removal Proposal has an adverse effect on rates and therefore we reverse the 2019 Mitigation Removal Order and reject the Mitigation Removal Application.  We require LG&E and KU to make a compliance filing within 30 days of the date of this order reinstituting the depancaking provisions of RS 402, effective March 17, 2021.[26]

---

[20] *Id.* at 176-77.

[21] *Id.* at 179.

[22] *Id.* at 177.

[23] *Id.*

[24] *Id.* at 180.

[25] *Id.* at 188.

[26] *See Louisville Gas & Elec. Co.*, 174 FERC ¶ 61,188 (2021) (accepting the three transition mechanism agreements, certificates of concurrence and notice of cancellation

LG&E and KU are directed to make any necessary refunds, with interest, within 30 days of the date of this order. Additionally, LG&E and KU are directed to submit a refund report within 15 days thereafter, regarding the basis for and calculations of the refunds paid.[27]

11.    As noted above, in the 2019 Mitigation Removal Order, the Commission focused solely on the effect on competition of the proposal to remove rate depancaking, arguing that the rate depancaking provisions were implemented to address the competitive effects of exiting MISO and thus a revision to those provisions under FPA section 203(b) should be evaluated based on its effect on competition.[28] The Court rejected that argument, finding that the Commission should have addressed all of the elements laid out in the Merger Policy Statement, which include the effects on competition, rates, and regulation.[29] The Court found that "it was arbitrary for the agency to completely ignore the significant effect that duplicative charges would have on customer rates."[30] On remand, we will evaluate the effect on rates of the Mitigation Removal Proposal to determine whether the effect is adverse, and if so, whether the adverse effect will be mitigated or offset by benefits that are likely to result from the Mitigation Removal Proposal.[31]

12.    First, based on the Court's Order, we will review the Mitigation Removal Proposal itself under the Commission's FPA section 203 public interest analysis. Under FPA section 203(b), the Commission analyzes the circumstances that led to the

_____

of RS 402, suspending them for a nominal period, to become effective March 17, 2021, as requested, subject to refund, and establishing hearing and settlement judge procedures).

[27] When submitting the report, LG&E and KU should use Type of Filing Code 1190 – Refund Report.

[28] 2019 Mitigation Removal Order, 166 FERC ¶ 61,206 at P 44.

[29] *KYMEA*, 45 F.4th at 167-68, 177-78. The Court concluded that the Commission's analysis as to the Mitigation Removal Proposal's effect on competition was supported by substantial evidence and was reasonably explained. *Id.* at 174-77. The Court noted the effect on regulation, in contrast, is not at issue in this proceeding. *Id.* at 168.

[30] *Id.* at 166.

[31] *See ITC Midwest LLC*, 140 FERC ¶ 61,125, at P 19 (2012) (describing the Commission's FPA section 203 public interest analysis of a proposed transaction's effect on rates).

implementation of a merger condition in the first place when evaluating whether
mitigation continues to be required and whether the FPA section 203(a) transaction can
continue to be found to be consistent with the public interest absent the mitigation.  As
part of this analysis, the Commission compares the circumstances that exist prior to the
implementation of the FPA section 203(b) proposal to those that will occur if the
Commission approves the proposal.  As applied here, because we review the Mitigation
Removal Proposal itself, this means we will compare rates prior to the Mitigation
Removal Proposal (i.e., depancaked rates implemented through RS 402) to those that will
exist after implementation of the Mitigation Removal Proposal (i.e., repancaked rates) to
determine the effect on rates and whether the LG&E and KU merger can continue to be
found consistent with the public interest without the depancaking provisions in RS 402.

13.    Our decision to focus our analysis on the effect on rates of the Mitigation Removal
Proposal, as opposed to looking at the merger's effect on rates when accounting for the
Mitigation Removal Proposal, is based on several considerations.  First, the D.C. Circuit
directed the Commission to consider "the effect of its supplemental order on rates," and
suggested that the appropriate frame of analysis was to look at rates with and without de-
pancaking.[32]  Second, the depancaking provisions in RS 402 were not required, nor
contemplated, under the original merger order.  Rather, the depancaking provisions in RS
402 were implemented as part of the provisions established when LG&E and KU exited
MISO.  At the time, in the MISO Withdrawal Order, the Commission evaluated the effect
of LG&E and KU's depancaking proposal on maintaining rate depancaking between
LG&E and KU's combined system and the footprint of the remaining MISO membership
and concluded that it would provide mitigation comparable to that achieved by LG&E
and KU's MISO membership.[33]  In addition, a specific provision on standard for review
was included in RS 402 that states:  "Any proposed changes to these requirements are

---

[32] *KYMEA*, 45 F.4th at 177-178.

[33] *See* MISO Withdrawal Order, 114 FERC ¶ 61,282 at P 110.  LG&E and KU
ultimately could not secure the reciprocity agreements discussed in the MISO
Withdrawal Order.  However, per the terms of the MISO Withdrawal Order, the
Commission "condition[ed] [its] section 203 approval of Applicants' withdrawal on
Applicants' willingness and ability to shield its KU requirements customers from any re-
pancaking of rates for transmission service between Applicants' transmission system and
the remaining members of [MISO]."  *Id.* P 112.  The Commission's goal was to maintain
the expanded geographic scope of the KU requirements customers' destination market
vis-à-vis LG&E and KU's membership in MISO.  *Id.* P 118.  As discussed, this led to RS
402, which was ultimately accepted as mitigation.

governed by Section 203 of the FPA."[34]   Based on these considerations, and the Court's requirement that the Commission evaluate all of the factors of the Commission's FPA section 203 analysis in this proceeding,[35] we will evaluate the effect on rates of the Mitigation Removal Proposal itself.[36]

14.    We find that the Mitigation Removal Proposal will have an adverse effect on rates for the customers involved.  As noted, under the Commission's effect on rates analysis, we evaluate the Mitigation Removal Proposal to determine whether the effect is adverse, and if so, whether the adverse effect will be mitigated or offset by benefits that are likely to result from the Mitigation Removal Proposal.  As the Court noted, "rate hikes are not only likely—they are certain.  All parties agree that they will happen."[37]   The Court cited to testimony from customers as to an increase in municipalities' rates of between 15% and 47%, with the potential in lost savings for Louisville Utilities customers of at least $200 million between 2018 and 2028.[38]

15.    In the Mitigation Removal Application, LG&E and KU argued that the Commission should not consider their proposal to be a rate increase, both because it will not change either LG&E and KU or MISO's transmission rates and because removal of rate depancaking will mean that all of LG&E and KU's customers will pay their "properly allocated cost of service."[39]  Both of these arguments are misguided.  The Commission's analysis of rate impacts under FPA section 203 is not limited to a particular type of transmission rate.  Removing rate depancaking will cause the affected

---

[34] 2019 Mitigation Removal Order, 166 FERC ¶ 61,206 at P 28 (quoting Rate Schedule No. 402, § 1.a.v.).

[35] *KYMEA*, 45 F.4th at 177 ("Because increases in electricity rates—independent of competition concerns—were an important consideration under the facts of this case, as well as under agency and judicial precedent, the Commission erred by backhanding the effect that pancaking would have on rates.")

[36] *Id.* ("Commission precedent requires [the Commission] to consider how modifying a merger order under Section 203(b) affects the public interest . . . and a merger's effect on rates is a central factor in the agency's public-interest analysis . . . .  So the Commission could not sensibly brush off the effect of its supplemental order on customers' rates.") (internal citations omitted).

[37] *Id.* at 177.

[38] *See id.* at 177-78.

[39] Mitigation Removal Application at 50.

customers to pay more for wheeling transactions regardless of whether the rates in each zone are changing.  This constitutes an adverse effect on rates.[40]

16.    LG&E and KU offered support for the Mitigation Removal Proposal by asserting that any adverse effect will be offset or mitigated by benefits that are likely to result from the Mitigation Removal Proposal.  LG&E and KU's main argument was that the depancaking provisions of RS 402 provide an undue benefit to those customers covered by RS 402 that is subsidized by those customers not covered by RS 402, and that removing those provisions would ensure equitable treatment and benefit the customers currently providing the subsidy.[41]  LG&E and KU argued that approximately 80 percent of the costs of the depancaking provisions of RS 402 are borne by LG&E and KU's retail customers through rates approved by their state regulators.[42]  LG&E and KU also argued that the depancaking provisions distort the market by providing an undue incentive for customers to purchase from sources in MISO, where they receive a significant transmission discount.[43]  In response, customers argued that the rate depancaking provisions of RS 402 are not an undue benefit and actually represent a compensation to customers for the pancaked rates that would not exist absent the decision to exit MISO.[44]  Customers argued that the costs of the depancaking provisions should be borne by the LG&E and KU shareholders rather than requiring the RS 402 customers to return to pancaked rates.[45]

17.    We are not persuaded by LG&E and KU's arguments that the Mitigation Removal Proposal will not result in an adverse effect on rates.  The fact that other LG&E and KU customers will not be affected by the Mitigation Removal Proposal or may benefit in some way from the Mitigation Removal Proposal does not change that the Mitigation

---

[40] *See NextEra Energy, Inc.*, 165 FERC ¶ 61,263, at P 40 (2018) (relying upon a rate de-pancaking commitment to avoid an adverse effect on rates to customers who would otherwise be subject to newly pancaked rates).

[41] In the Mitigation Removal Application, LG&E and KU list several "similarly situated transmission customers" who are not covered by RS 402.  Mitigation Removal Application at 55.

[42] *Id.* at 57.  *See also* Kentucky Industrial Utility Customers Oct. 2, 2018 Comments at 3; Pub. Serv. Comm'n of the Commonwealth of Kentucky Oct. 2, 2018 Comments at 3.

[43] Mitigation Removal Application at 60.

[44] *See* Kentucky Municipals Oct. 2, 2018 Protest, Painter Aff. at 9.

[45] *See* American Municipal Power, Inc. Oct. 17, 2018 Answer at 5.

Removal Proposal will result in an adverse effect on RS 402 customers' rates, which will increase. No party disputes that RS 402 customers' rates will increase. Additionally, the arguments raised by LG&E and KU regarding the undue benefit to RS 402 customers were equally true at the time RS 402 was implemented in 2006. However, the difference now is that the rate depancaking provisions in RS 402 have been used by RS 402 customers to seek out alternative supply arrangements, which was a specific requirement by the Commission when LG&E and KU withdrew from MISO.[46] In this regard, RS 402 customers are clearly not receiving an undue benefit; they were placed in the same position they would have been in had LG&E and KU not withdrawn from MISO, which was a condition for the Commission's approval of LG&E and KU's merger.[47] For these reasons, we also do not view the Mitigation Removal Proposal as providing the benefits that LG&E and KU argue it would.

18.    Nor does the finding that the Mitigation Removal Proposal was in the public interest when considering the effect of the Mitigation Removal Proposal on competition result in an offsetting benefit. Although the Commission made a finding that the Mitigation Removal Proposal was in the public interest when considering the effect on competition, a finding upheld by the Court, that finding was based on the evidence that sufficient wholesale power competition would continue even with the return of pancaking.[48] The Commission did not find that there was a specific benefit to competition from the Mitigation Removal Proposal that would outweigh an adverse effect on rates. Even if we consider the other factors in the Commission's merger analysis,[49] we are not convinced that the other elements of the Commission's section 203 analysis would warrant accepting the Mitigation Removal Proposal given our finding that it will result in an adverse effect on rates. For these reasons, we cannot find that the LG&E and KU merger continues to be consistent with the public interest without the depancaking provisions in RS 402 so we reject the Mitigation Removal Application. We require LG&E and KU to make a compliance filing within 30 days of the date of this order reinstituting the depancaking provisions of RS 402, effective March 17, 2021.

---

[46] MISO Withdrawal Order, 114 FERC ¶ 61,282 at P 118.

[47] Merger Order, 82 FERC at 62,222-23 ("Our approval of the merger is based on LG&E and KU's continued participation in [MISO].").

[48] 2019 Mitigation Removal Order, 166 FERC ¶ 61,206 at P 68.

[49] See KYMEA, 45 F.4th at 179 ("Beyond that, even if an inquiry into rates would favor keeping depancaking in place, that would not dictate the outcome of the Commission's full public-interest determination based on all relevant factors.").

19.    Because we reverse our prior orders and reject the Mitigation Removal Proposal, we do not need to address the Court's findings regarding the transition mechanism, which is now moot.

The Commission orders:

(A)    The Mitigation Removal Application is hereby rejected, as discussed in the body of this order.

(B)    LG&E and KU are directed, within 30 days of the date of this order, to make a compliance filing reinstituting the depancaking provisions of RS 402, as discussed in the body of this order.

(C)    LG&E and KU are directed to make refunds, with interest, within 30 days of the date of this order, as discussed in the body of this order.  LG&E and KU are directed to submit a refund report within 15 days thereafter, regarding the basis for and calculations of the refunds paid.

By the Commission.  Commissioner Danly is dissenting with a separate statement
                                attached.

( S E A L )


                                        Debbie-Anne A. Reese,
                                        Deputy Secretary.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Louisville Gas and Electric Company                    Docket Nos.  EC98-2-005
Kentucky Utilities Company                                              ER18-2162-004

(Issued May 18, 2023)

DANLY, Commissioner, *dissenting*:

1.      I dissent from today's order, which imposes a requirement that exceeds the Commission's authority under Federal Power Act (FPA) section 203.[1]  In order to understand why, it will be necessary to delve into the background of this proceeding.

2.      In 1998, the Commission approved the proposed merger between Louisville Gas and Electric Company (LG&E) and Kentucky Utilities Company (KU) (1998 Merger).[2] Prior to the 1998 Merger, neither LG&E nor KU were members of the Midwest Independent Transmission System Operator, Inc. (MISO),[3] which at the time had been proposed but had not yet been approved by the Commission.  As a result, transmission rates for transmission of power to LG&E or KU from any of the entities that now are in MISO were pancaked, as were the transmission rates between LG&E and KU.

3.      As part of their merger application, LG&E and KU proposed to combine their transmission facilities and to charge a single rate for transmission.[4]  This had the effect of de-pancaking rates for transmission from one company's system to the other's.  This transmission rate de-pancaking between LG&E and KU was not terminated by the Commission and remains in effect today.

4.      In approving the 1998 Merger, the Commission conditioned its approval on LG&E and KU joining MISO when it was formed.[5]  Although that condition would have the beneficial rate effect of depancaking transmission rates for transmission to and from other

---

[1] 16 U.S.C. § 824b.

[2] *See Louisville Gas & Elec. Co*., 82 FERC ¶ 61,308 (1998) (Merger Order).

[3] The Midwest Independent Transmission System Operator, Inc. is now the Midcontinent Independent System Operator, Inc.

[4] Merger Order, 82 FERC ¶ 61,308 at 62,215.

[5] *Id.* at 62,222-23.

MISO utilities to the merged company's system when MISO commenced operations, the condition was not imposed for that reason. Rather, the Commission imposed this requirement to ensure that the 1998 Merger did not have an adverse effect on competition.[6] Nor could the requirement have been imposed to address effects on rates because, before the 1998 Merger, transmission rates for transmission from the other MISO utilities to LG&E and KU were pancaked.

5.      In December of 2001, MISO commenced operations.[7] At that time, transmission rates between LG&E and KU and other MISO utilities were depancaked. Keep in mind that this depancaking took place *after* the 1998 Merger, and was completely unrelated.

6.      In 2006, the Commission approved LG&E and KU's withdrawal from MISO.[8] As part of its approval, the Commission imposed the depancaking condition that is the subject of this remand proceeding.[9] However, that condition was not imposed to address any rate effects of the 1998 Merger, but because the condition "will address our concerns regarding horizontal market power."[10] Nor could depancaking have been imposed to address the rate effects of the 1998 Merger because transmission rates were not depancaked until *well after* that merger, for completely unrelated reasons. Thus, it could not have been necessary to prevent merger-related rate increases.

7.      In 2019, the Commission approved the termination of depancaking, finding that it was no longer necessary to retain the condition to ensure that the 1998 Merger would not affect competition.[11] The Commission stated that, because the mitigation was implemented to remedy a horizontal market power concern, in evaluating the removal of the depancaking condition, the Commission would only consider the effect of the removal on horizontal competition, rather than on all of the factors the Commission traditionally considers when evaluating applications under FPA section 203(a).[12] On appeal, the U.S. Court of Appeals for the District of Columbia Circuit (D.C. Circuit)

---

[6] *Id.* at 62,223.

[7] *See MISO*, FERC, https://cms.ferc.gov/industries-data/electric/electric-power-markets/miso (last updated Apr. 20, 2023).

[8] *Louisville Gas & Elec. Co.*, 114 FERC ¶ 61,282 (2006).

[9] *Id.* P 108.

[10] *Id*.

[11] *Louisville Gas & Elec. Co.*, 166 FERC ¶ 61,206 (2019 Order), *order on reh'g*, 168 FERC ¶ 61,152 (2019), *order on reh'g*, 172 FERC ¶ 61,228 (2020).

[12] 2019 Order, 166 FERC ¶ 61,206 at P 44.

upheld the Commission's finding that terminating the depancaking condition did not then cause the 1998 Merger to have negative effects on competition, but held that the Commission must also consider the effects of terminating the depancaking condition on rates.[13]

8.     The Commission's inquiry on remand should be straightforward.  "When the Commission reviews a proposed transaction's effect on rates, the Commission's focus is on the effect the *proposed transaction itself* will have on rates, whether that effect is adverse, and whether any adverse effect will be offset or mitigated by benefits that are likely to result from the proposed transaction."[14]  This is a common-sense approach to the application of the effect on rates component of the Commission's review of mergers under FPA section 203, which requires that the Commission consider whether a "proposed transaction will be consistent with the public interest."[15]

9.     Today's order, however, ignores this requirement.  Instead of considering whether termination of the depancaking condition would cause the *merger* to affect rates, as required by the statute, the Commission focuses solely on whether terminating the depancaking condition itself "has an adverse effect on rates."[16]  In other words, the Commission "will compare rates prior to the [termination of depancaking] (i.e., depancaked rates implemented through RS 402) to those that will exist after implementation of the [termination of depancaking] (i.e., repancaked rates) to determine the effect on rates and whether the LG&E and KU merger can continue to be found consistent with the public interest."[17]

10.    The Commission has provided three justifications for divorcing its consideration of the rate consequences of terminating the depancaking condition from its consideration of the effects of the 1998 Merger, to which the depancaking condition was attached.  None of those justifications have any merit.  First, the D.C. Circuit did not hold, as the Commission suggests, that the Commission should ignore whether the depancaking

---

[13] *Kentucky Mun. Energy Agency v. FERC*, 45 F.4th 162, 176-77 (D.C. Cir. 2022) (*KYMEA*).

[14] *NextEra Energy, Inc.*, 173 FERC ¶ 61,029, at P 27 (2020) (emphasis added) (citing *Policy Statement on Hold Harmless Commitments*, 155 FERC ¶ 61,189, at P 5 (2016)).

[15] 16 U.S.C. § 824b(a)(4).

[16] *Louisville Gas & Elec. Co.*, 183 FERC ¶ 61,122, at P 10 (2023) (2023 Order).

[17] *Id.* P 12.

condition was necessary to ensure that the 1998 Merger does not affect rates,[18] but only required the Commission to "reconsider its decision."[19]  Second, although the Commission correctly notes that the depancaking condition was not imposed in the 1998 Merger Order, it fails to explain why that matters.[20]  Third, the Commission similarly provides no explanation of the significance of its final justification: "[A] specific provision on standard for review was included in RS 402 that states:  'Any proposed changes to these requirements are governed by Section 203 of the FPA.'"[21]

11.     If the termination of the rate depancaking condition were evaluated, as it should be, based solely upon the termination's impact on the rate effects of the 1998 Merger, then the termination of that condition must be upheld.  Put simply:  the termination of depancaking *cannot* cause a rate increase to result from the 1998 Merger because the rates for transmission from the MISO utilities to LG&E and KU were pancaked prior to that merger, just as they are after termination of the condition.  Indeed, far from causing rates to increase, the 1998 Merger continues to have the beneficial rate effect of depancaking transmission rates between what were then LG&E's and KU's transmission systems.  Rather, the depancaking condition was relevant only to the effect of the 1998 Merger on competition, and the D.C. Circuit upheld the Commission's conclusion that the condition was no longer required for this purpose.[22]

---

[18] *See id.* P 13.

[19] *KYMEA*, 45 F.4th at 180.

[20] 2023 Order, 183 FERC ¶ 61,122 at P 13.

[21] *Id.* (citation omitted).

[22] *KYMEA*, 45 F.4th at 176-77.

12.     True, termination of the de-pancaking condition will cause an increase in rates for transmission between MISO utilities and LG&E and KU, but that is an increase from the non-pancaked rates that went into effect when MISO commenced operations a few years *after* the 1998 Merger was consummated, for reasons unrelated to the merger. Termination of the depancaking condition simply restores some, but not all, of the pancaked rates that were in effect at the time of the merger and continued to be in effect until MISO commenced operations in 2001.  This increase did not result from the 1998 Merger and, as previously noted, the effect-on-rates element of Commission's merger analysis protects customers only from "the effect the proposed transaction itself will have on rates."[23]

For these reasons, I respectfully dissent.

_____
James P. Danly
Commissioner

---

[23] *NextEra Energy, Inc.*, 173 FERC ¶ 61,029 at P 27.

184 FERC ¶ 62,036
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Louisville Gas and Electric Company                  Docket Nos. EC98-2-006
Kentucky Utilities Company                                            ER18-2162-005

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(July 17, 2023)

Rehearing has been timely requested of the Commission's order issued on
May 18, 2023, in this proceeding. *Louisville Gas & Elec. Co.*, 183 FERC ¶ 61,122
(2023). In the absence of Commission action on a request for rehearing within 30 days
from the date it is filed, the request for rehearing may be deemed to have been denied.
16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2022); *Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Debbie-Anne A. Reese,
Deputy Secretary.

**ATTACHMENT B**

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Louisville Gas and Electric Company ("Louisville Gas and Electric") and Kentucky Utilities Company ("Kentucky Utilities") submit the following disclosure statement.

Louisville Gas and Electric and Kentucky Utilities are regulated utilities that serve approximately 1.3 million customers. Louisville Gas and Electric serves 328,000 natural gas customers and 414,000 electric customers in Louisville, Kentucky and 16 surrounding counties. Kentucky Utilities serves 555,000 electric customers in 77 Kentucky counties and five counties in Virginia.

Louisville Gas and Electric and Kentucky Utilities are wholly-owned subsidiaries of LG&E and KU Energy LLC ("LKE"), a holding company, which in turn is a wholly-owned subsidiary of PPL Corporation. Other than PPL Corporation, no publicly-held company owns 10% or more of any LKE membership interest or Louisville Gas and Electric and Kentucky Utilities' shareholding interests.  No publicly held company has a 10% or greater ownership interest in PPL Corporation.

Dated: July 28, 2023

/s/ *Misha Tseytlin*
MISHA TSEYTLIN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

**ATTACHMENT C**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 28th of July, 2023, I filed the foregoing Petition For Review with the Clerk of the U.S. Court of Appeals for the District of Columbia Circuit, using the CM/ECF System.

Pursuant to Rules 15(c) and 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that, on the 28th of July, 2023, I caused to be served a copy of the foregoing Petition for Review and Corporate Disclosure Statement by email to each party designated on the official service lists in FERC Docket Nos. EC98-2-006 and ER18-2162-005 (listed in Attachment C), and to the FERC Solicitor.  Upon receiving a file-stamped copy of this Petition, I will cause a paper copy of it to be mailed to:

| | |
|---|---|
| Kimberly D. Bose, Secretary | Robert H. Solomon, Solicitor |
| Federal Energy Regulatory Commission | Federal Energy Regulatory Commission |
| 888 First Street NE | 888 First Street NE |
| Washington, DC 20426 | Room 91-01 |
| | Washington, DC 20426 |
| | Robert.Solomon@ferc.gov |

I declare the above to be true and correct under penalty of perjury.

Dated: July 28, 2023

/s/ *Misha Tseytlin*

MISHA TSEYTLIN
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com

## FERC Service List in Docket No. EC98-2-006

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| American Municipal Power, Inc. | | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Christopher J Norton<br>Director of Market Regulatory<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>cnorton@amppartners.org |
| Big Rivers Electric Corporation | **JAMES MILLER<br>SULLIVAN, MOUNT JOY, STAINBACK & MILLER<br>PO Box 727<br>Owensboro, KENTUCKY 42302-0727<br>UNITED STATES | |
| Big Rivers Electric Corporation | John Lilyestrom<br>Hogan Lovells<br>555 Thirteenth St., NW<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>john.lilyestrom@hoganlovells.com | |
| Bluegrass Generation Company, L.L.C. | David Tewksbury<br>Partner<br>McDermott Will & Emery LLP<br>500 N CAPITOL ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>dtewksbury@mwe.com | |
| Cash Creek Generation LLC | Gary Bachman<br>Van Ness Feldman, LLP<br>1050 Thomas Jefferson St. NW<br>Washington, DISTRICT OF COLUMBIA 20007-3877<br>UNITED STATES<br>GDB@VNF.com | |
| Coalition of Midwest Power Producers, Inc. | Scott Storms<br>Coalition of Midwest Power Pro<br>Coalition of Midwest Power Producers, Inc.<br>5898 Garden Gate Way<br>Suite 300<br>Carmel, INDIANA 46033<br>UNITED STATES<br>scott.storms@compp.org | Mark J Volpe<br>mark.volpe@compp.org |
| Duck River Electric Membership Corp | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | Michael Watson<br>President and CEO<br>Duck River Electric Membership Corp<br>1411 Madison Street<br>PO Box 89<br>Shelbyville, TENNESSEE 37162-0089<br>mwatson@dremc.com |

| | | |
|---|---|---|
| | *~~~~~~~~~@~~~~~~~.com* | *~~~~~~~@~~~~~~~.com* |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | Chuck Dugan<br>Director, Federal and RTO Regu<br>East Kentucky Power Cooperative, Inc.<br>4775 Lexington Road<br>Winchester, KENTUCKY 40391<br>chuck.dugan@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 6TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |
| ENRON POWER MARKETING, INC | **Harry Kingerski<br>Contact/Addr No Longer Valid<br>Enron Corp.<br>UNITED STATES | |
| ENRON POWER MARKETING, INC | **Joseph Hartsoe<br>Contact/Addr No Longer Valid<br>Enron Corp.<br>UNITED STATES | |
| Illinois Municipal Electric Agency | | Kevin Gaden<br>Illinois Municipal Electric Agency<br>3400 Conifer Dr<br>Springfield, ILLINOIS 62711<br>kgaden@imea.org |
| INDIANA MUNICIPAL POWER AGENCY | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | **RAJESHWAR G RAO<br>PRESIDENT<br>INDIANA MUNICIPAL POWER AGENCY<br>11610 N College Ave<br>Carmel, INDIANA 460325602<br>Hamilton |
| KENTUCKY INDUSTRIAL UTILITY CUSTOMERS | David Boehm<br>Attorney at Law<br>BOEHM, KURTZ & LOWRY<br>36 East Seventh St, Ste 1510.<br>Cincinnati, OHIO 45202<br>UNITED STATES<br>Dboehm@BKLlawfirm.com | |
| Kentucky Industrial Utility Customers, Inc. | Michael Kurtz<br>Esquire<br>BOEHM, KURTZ & LOWRY<br>36 E 7TH ST STE 1510<br>CINCINNATI, OHIO 45202<br>UNITED STATES<br>mkurtz@bkllawfirm.com | |
| Kentucky Municipal Energy Agency | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | Douglas A. Buresh<br>President and CEO<br>Kentucky Municipal Energy Agency<br>1700 Eastpoint Parkway<br>Suite 220<br>Louisville, KENTUCKY 40223<br>dburesh@kymea.org |

| | | Ronald W Herd |
|---|---|---|
| Kentucky Municipal Energy Agency | | Director/Past Chair<br>Kentucky Municipal Energy Agency<br>PO Box 1350<br>Corbin, KENTUCKY 40702<br>ron.herd@corbinutilities.com |
| Kentucky Municipal Energy Agency | | Charlie Musson, ESQ<br>Rubin & Hays<br>450 South Third Street<br>Kentucky Home Trust Building<br>Louisville, KENTUCKY 40202<br>csmusson@rubinhays.com |
| Kentucky Municipal Energy Agency | | Patrick D Pace<br>Patrick D. Pace<br>221 West Second Street<br>Owensboro, KENTUCKY 42303<br>ppace@kyandp.com |
| Kentucky Municipal Power Agency | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | |
| Kentucky Municipal Power Agency | | Whit Williamson<br>Old Dominion Electric Cooperat<br>Thompson Coburn LLP<br>4201 Dominion Blvd<br>Glen Allen, VIRGINIA 23060<br>wwilliamson@odec.com |
| Kentucky Municipal Power Agency | | Kent Price, ESQ<br>McMurry & Livingston, PLLC<br>201 BROADWAY ST<br>PADUCAH, KENTUCKY 42001<br>kent@ml-lawfirm.com |
| Kentucky Municipal Power Agency | | Kevin Kizzee<br>General Manager<br>Princeton Electric Plant Board<br>PO Box 608<br>Princeton, KENTUCKY 42445<br>kkizzee@pepb.net |
| Kentucky Municipal Power Agency | | B. Todd Wetzel<br>108 East Court Square<br>Princeton, KENTUCKY 42445<br>btwetzel@att.net |
| Kentucky Municipals | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | David E Pomper, ESQ<br>Attorney<br>Spiegel & McDiarmid LLP<br>1875 Eye St. NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>david.pomper@spiegelmcd.com |
| Kentucky Municipals | | Latif Nurani<br>Spiegel & McDiarmid LLP<br>1875 EYE ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>latif.nurani@spiegelmcd.com |

| | | |
|---|---|---|
| Kentucky Municipals | | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>eService@spiegelmcd.com |
| Kentucky Public Service Commission | | Quang D Nguyen<br>Staff Counsel<br>Kentucky Public Service Commission<br>211 Sower Boulevard<br>Frankfort, KENTUCKY 40602<br>quangd.nguyen@ky.gov |
| Kentucky Utilities Company | | **GEORGE S BROOKS, II<br>Kentucky Utilities Company<br>1 Quality St<br>Lexington, KENTUCKY 405071428<br>Fayette |
| Louisville Gas & Electric Company | | **JOHN R MCCALL<br>Louisville Gas & Electric Company<br>PO Box 32030<br>Louisville, 40232-2030<br>Jefferson |
| Louisville Gas & Electric Company | Christopher Jones<br>Troutman Sanders LLP<br>401 9TH ST NW<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>christopher.jones@troutmansanders.com | Jennifer Keisling<br>Sr Corporate Attorney<br>220 West Main St<br>Louisville, KENTUCKY 40202<br>Jefferson<br>jennifer.keisling@lge-ku.com |
| Louisville Gas & Electric Company | Kelsey Colvin<br>Senior Counsel<br>LG&E and KU Energy LLC<br>220 W MAIN ST<br>LOUISVILLE, KENTUCKY 40202<br>UNITED STATES<br>kacolvin@pplweb.com | |
| Louisville Gas & Electric Company | | Christopher Jones<br>Partner<br>401 9TH ST NW STE 1000<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>chris.jones@troutman.com |
| Proliance Energy LLC | **Steven Sherman<br>Contact/Addr No Longer Valid<br>Proliance Energy LLC<br>UNITED STATES | **Steven M Sherman, Esq<br>Contact/Addr No Longer Valid<br>Proliance Energy LLC<br>Marion |
| PSC of the Commonwealth of Kentucky | | **LINDA K BREATHITT<br>PSC of the Commonwealth of Kentucky<br>PO Box 615<br>Frankfort, 40602-0615<br>Franklin |
| Southeastern Power Administration | **Lawrence Gollomp<br>Contact/Addr No Longer Valid<br>U.S. Department of Energy<br>UNITED STATES | |

| | | |
|---|---|---|
| St. Joseph II, LLC | Mark Williams<br>Mayer Brown LLP<br>Morgan, Lewis & Bockius LLP<br>1999 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>MarkWilliams@mayerbrown.com | Heather Lisa Feingold, ESQ<br>Mayer Brown LLP<br>Morgan, Lewis & Bockius LLP<br>1999 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>hfeingold@mayerbrown.com |
| THE ERORA<br>GROUP, L.L.C. | Contact/Addr No Longer Valid<br>THE ERORA GROUP, L.L.C.<br>URUGUAY | |
| Van Ness<br>Feldman, LLP | | Evan Charles Reese, III<br>Partner<br>555 11th Street, NW<br>Washington, DISTRICT OF COLUMBIA 20004<br>ereese@daypitney.com |

## FERC Service List in Docket No. ER18-2162-005

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| American Municipal Power, Inc. | | Lisa G McAlister<br>Deputy General Counsel - FERC/<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>lmcalister@amppartners.org |
| American Municipal Power, Inc. | | Christopher J Norton<br>Director of Market Regulatory<br>American Municipal Power, Inc.<br>1111 Schrock Road<br>Suite 100<br>Columbus, OHIO 43229<br>cnorton@amppartners.org |
| Big Rivers Electric Corporation | John Lilyestrom<br>Hogan Lovells LLP<br>555 Thirteenth St., NW<br>Washington, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>john.lilyestrom@hoganlovells.com | |
| Coalition of Midwest Power Producers, Inc. | Scott Storms<br>Coalition of Midwest Power Pro<br>Coalition of Midwest Power Producers, Inc.<br>5898 Garden Gate Way<br>Suite 300<br>Carmel, INDIANA 46033<br>UNITED STATES<br>scott.storms@compp.org | Mark J Volpe<br>mark.volpe@compp.org |
| Duck River Electric Membership Corp | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | Michael Watson<br>President and CEO<br>Duck River Electric Membership Corp<br>1411 Madison Street<br>PO Box 89<br>Shelbyville, TENNESSEE 37162-0089<br>mwatson@dremc.com |
| East Kentucky Power Cooperative, Inc. | Daniel Frank<br>Partner<br>Eversheds Sutherland (US) LLP<br>700 Sixth Street, N.W.<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20001-3980<br>UNITED STATES<br>DanielFrank@eversheds-sutherland.com | Chuck Dugan<br>Director, Federal and RTO Regu<br>East Kentucky Power Cooperative, Inc.<br>4775 Lexington Road<br>Winchester, KENTUCKY 40391<br>chuck.dugan@ekpc.coop |
| East Kentucky Power Cooperative, Inc. | Allison Salvia<br>Eversheds Sutherland (US) LLP<br>700 6TH ST NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>AllisonSalvia@eversheds-sutherland.com | |

| | | |
|---|---|---|
| Kentucky Industrial Utility Customers, Inc. | Michael Kurtz<br>Esquire<br>BOEHM, KURTZ & LOWRY<br>36 E 7TH ST STE 1510<br>CINCINNATI, OHIO 45202<br>UNITED STATES<br>mkurtz@bkllawfirm.com | |
| Kentucky Municipal Energy Agency | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | Douglas A. Buresh<br>President and CEO<br>Kentucky Municipal Energy Agency<br>1700 Eastpoint Parkway<br>Suite 220<br>Louisville, KENTUCKY 40223<br>dburesh@kymea.org |
| Kentucky Municipal Energy Agency | | Ronald W Herd<br>Director/Past Chair<br>Kentucky Municipal Energy Agency<br>PO Box 1350<br>Corbin, KENTUCKY 40702<br>ron.herd@corbinutilities.com |
| Kentucky Municipal Energy Agency | | Charlie Musson, ESQ<br>Rubin & Hays<br>450 South Third Street<br>Kentucky Home Trust Building<br>Louisville, KENTUCKY 40202<br>csmusson@rubinhays.com |
| Kentucky Municipal Energy Agency | | Patrick D Pace<br>Patrick D. Pace<br>221 West Second Street<br>Owensboro, KENTUCKY 42303<br>ppace@kyandp.com |
| Kentucky Municipal Power Agency | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | |
| Kentucky Municipal Power Agency | | Whit Williamson<br>Old Dominion Electric Cooperat<br>Thompson Coburn LLP<br>4201 Dominion Blvd<br>Glen Allen, VIRGINIA 23060<br>wwilliamson@odec.com |
| Kentucky Municipal Power Agency | | Kent Price, ESQ<br>McMurry & Livingston, PLLC<br>201 BROADWAY ST<br>PADUCAH, KENTUCKY 42001<br>kent@ml-lawfirm.com |
| Kentucky Municipal Power Agency | | Kevin Kizzee<br>General Manager<br>Princeton Electric Plant Board<br>PO Box 608<br>Princeton, KENTUCKY 42445<br>kkizzee@pepb.net |

| | | |
|---|---|---|
| Kentucky Municipal Power Agency | | B. Todd Wetzel<br>108 East Court Square<br>Princeton, KENTUCKY 42445<br>btwetzel@att.net |
| Kentucky Municipals | Thomas Trauger<br>Spiegel & McDiarmid LLP<br>1875 Eye Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tom.trauger@spiegelmcd.com | David E Pomper, ESQ<br>Attorney<br>Spiegel & McDiarmid LLP<br>1875 Eye St. NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>david.pomper@spiegelmcd.com |
| Kentucky Municipals | | Latif Nurani<br>Spiegel & McDiarmid LLP<br>1875 EYE ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>latif.nurani@spiegelmcd.com |
| Kentucky Municipals | | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20006<br>eService@spiegelmcd.com |
| Kentucky Public Service Commission | | Quang D Nguyen<br>Staff Counsel<br>Kentucky Public Service Commission<br>211 Sower Boulevard<br>Frankfort, KENTUCKY 40602<br>quangd.nguyen@ky.gov |
| Louisville Gas & Electric Company | | Christopher Jones<br>Partner<br>401 9TH ST NW STE 1000<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>chris.jones@troutman.com |
| Louisville Gas and Electric Company | Christopher Jones<br>Troutman Sanders LLP<br>401 9TH ST NW<br>TROUTMAN PEPPER HAMILTON SANDERS LLP<br>WASHINGTON, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>christopher.jones@troutmansanders.com | |
| Louisville Gas and Electric Company | Kelsey Colvin<br>Senior Counsel<br>LG&E and KU Energy LLC<br>220 W MAIN ST<br>LOUISVILLE, KENTUCKY 40202<br>UNITED STATES<br>kacolvin@pplweb.com | Jennifer Keisling<br>Sr Corporate Attorney<br>220 West Main St<br>Louisville, KENTUCKY 40202<br>Jefferson<br>jennifer.keisling@lge-ku.com |
| St. Joseph II, LLC | Mark Williams<br>Mayer Brown LLP<br>Morgan, Lewis & Bockius LLP<br>1999 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>MarkWilliams@mayerbrown.com | Heather Lisa Feingold, ESQ<br>Mayer Brown LLP<br>Morgan, Lewis & Bockius LLP<br>1999 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>hfeingold@mayerbrown.com |